## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2018, 8:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert M. Nolan,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent* | June 19, 2018<br><br>Court of Appeals Case No.<br>22A01-1708-PC-1816<br><br>Appeal from the Floyd Superior Court<br><br>The Honorable Maria D. Granger, Judge<br><br>Trial Court Cause No.<br>22D03-1401-PC-1 |

**Crone, Judge.**

# Case Summary

Robert M. Nolan appeals the denial of his petition for post-conviction relief. He contends that the post-conviction court clearly erred in determining that he failed to demonstrate that he received the ineffective assistance of trial and appellate counsel. Nolan further asserts that he is entitled to a new trial based on newly discovered evidence. Concluding that Nolan has not met his burden to prove that he received ineffective assistance, and further concluding that Nolan's claim of newly discovered evidence is unavailing, we affirm.

# Facts and Procedural History

The underlying facts as recited by another panel of this Court on direct appeal follow:

> Nolan and Shannon Nolan (Mother) were married in 2001. Mother had three minor daughters from a prior marriage, K.F.D., M.D., and K.D. Nolan and Mother had a biological daughter, M.C.D. The family lived in Ohio until the end of 2004 and then moved to Floyd County, Indiana.
>
> Nolan was a chiropractor and Mother was a nurse. The children were often in Nolan's care while Mother worked. Mother had no reservations about leaving her children with Nolan. Nolan took K.D. on fishing trips alone, and K.D. periodically worked at Nolan's office.
>
> In 2005, M.D. moved out of the bedroom she shared with K.F.D., who was thirteen years old at the time. Nolan began fondling K.F.D.'s body, touching her breasts and genitals, and kissing her. Nolan complimented K.F.D.'s body, told K.F.D. that he loved her, and said that he wished he could have married

her instead of Mother.

Nolan told K.F.D. about oral sex and taught her how to perform oral sex. On January 1, 2008, Nolan took K.F.D. to her room and the two performed oral sex on each other. On February 14, 2008, Nolan asked K.F.D. to perform oral sex on him while in K.F.D.'s bedroom and ejaculated in her mouth. The degree of sexual activity escalated as Nolan told K.F.D. that he wanted to have intercourse with her as well. Sometime between November 2008 to March 2009, Nolan and K.F.D. were in her bedroom. K.F.D.'s pants were off and Nolan began grabbing her knees. K.F.D. refused but Nolan insisted that he wanted to have intercourse. Nolan managed to slightly penetrate K.F.D.'s vagina. K.F.D. told Nolan that it hurt and Nolan expressed surprise.

K.F.D. was confused about her feelings toward Nolan. Although she believed that Nolan loved her as a girlfriend, K.F.D. considered him to be her stepfather. K.F.D. wrote a letter to Nolan beginning with, "[g]ood morning my love. I wanted to let you know that I love you with all my heart." The letter ended with K.F.D.'s good wishes for an upcoming fishing trip. K.F.D. also gave a birthday card to Nolan in 2007 stating that "I love you with all my heart." Prior to May 2009, K.F.D. wrote a letter to Nolan describing her feelings toward him. In the letter, K.F.D. stated that "[w]hat has happened should have never happened and it needs to stop. I think I am just as guilty as you. Even when I knew it was wrong and it hurt, I still let it go [ … ]. I know that this is wrong and that's why you wanted it kept a secret."

On May 20, 2009, Mother filed a petition for legal separation against Nolan. Later that evening, Mother was alone with K.F.D. and M.D. Mother asked them what they thought. K.F.D. revealed her sexual activities with Nolan. Mother listened until Nolan returned, then sent K.F.D. to her room. After greeting Nolan, Mother returned to K.F.D.'s room and listened to further details. K.F.D. indicated that she was reluctant to come forward

for fear of breaking up the family. Mother locked K.F.D. in her room and confronted Nolan who denied the allegations. That same day Mother called the police. Officer Jason Kerber of the Floyd County Police Department (Officer Kerber) responded and Mother informed him that Nolan had molested K.F.D. since she was a child. K.F.D. told Officer Kerber that she felt guilt and had not revealed the allegations in order to preserve the family. Detective Jeff Firkins of the Floyd County Police Department (Detective Firkins) interviewed Nolan at the police station. Again, Nolan denied the allegations. A forensic interviewer met with K.F.D., K.D., and M.D. K.F.D. repeated her allegations against Nolan. Although K.D. did not make allegations against Nolan, M.D. alleged that Nolan had fondled her.

On July 8, 2009, the State filed an Information charging Nolan with the following: Count I, child molesting, a Class C felony, I.C. § 35-42-4-3(b); Counts II and III, child seduction, Class D felonies, I.C. § 35-42-4-7(h)(1); and Count IV, rape, a Class B felony, I.C. § 35-42-4-1(a)(1).[] Prior to trial, Nolan filed a motion in limine under Ind. Evid. Rule 404(b) to prohibit any reference to allegations that he fondled M.D. The trial court granted the motion in limine subject to an offer of proof at a subsequent hearing or during trial. The State did not make an offer of proof and the matter proceeded to trial.

On June 28, 2010, a jury trial was held. The jury found Nolan guilty as charged on all Counts. On August 6, 2010, the trial court sentenced Nolan to eight years with two years suspended on Count I; three years with one year suspended each on Counts II and III; and sixteen years with four years suspended on Count IV. The trial court ordered all sentences to run consecutively.

*Nolan v. State*, No. 22A01-1007-CR-433, 2012 WL 456537, at *1-2 (Ind. Ct. App. Feb. 14, 2012) (some citations omitted), *trans. denied*.

[3] On direct appeal, Nolan asserted that: (1) the trial court committed fundamental error in admitting certain evidence; (2) the testimony of witnesses corroborating the victim's testimony constituted fundamental error; (3) the trial court abused its discretion in admitting evidence of his prior bad acts; and (4) his sentence was inappropriate. *Id*. We rejected his arguments and affirmed his convictions and sentence. *Id*. at 3.

[4] Nolan filed a petition for post-conviction relief on January 27, 2014. In June of 2014, Nolan also filed a petition for modification of his sentence. Following an evidentiary hearing, the trial court denied Nolan's petition for modification of his sentence. Nolan appealed, and we affirmed the trial court's denial of the petition to modify in a memorandum decision. *Nolan v. State*, No. 22A01-1503-CR-120, 2016 WL 1274125, at *1-2 (Ind. Ct. App. Mar. 31, 2016), *trans. denied*.

[5] After several continuances, the post-conviction court held an evidentiary hearing on June 27, 2016. Thereafter, the post-conviction court entered its findings of fact, conclusions of law, and judgment denying Nolan's request for post-conviction relief. This appeal ensued.[1]

---

[1] Nolan has sent a voluminous handwritten pro se document to the Clerk of the Indiana Appellate Courts. He has been informed that the document has not been filed because he is represented by counsel. *See Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000) (defendant speaks to court through counsel).

# Discussion and Decision

The petitioner in a post-conviction proceeding has the burden of establishing grounds for relief by a preponderance of the evidence. *Ellis v. State*, 67 N.E.3d 643, 646 (Ind. 2017). When appealing the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. To prevail on appeal, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. Where, as here, the post-conviction court makes findings of fact and conclusions of law as required by Indiana Post-Conviction Rule 1(6), we will reverse its findings only upon a finding of clear error, namely "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted). We will not reweigh the evidence or judge the credibility of witnesses, and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014).

## Section 1 – Nolan has not shown that his trial counsel rendered ineffective assistance.

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017). "To satisfy the first prong, 'the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the

defendant did not have the 'counsel' guaranteed by the Sixth Amendment.'" *Id.* (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). To satisfy the second prong, the defendant must show prejudice. *Id.* To demonstrate prejudice from counsel's deficient performance, a petitioner need only show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Middleton v. State*, 72 N.E.3d 891, 891-92 (Ind. 2017) (emphasis and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

[8] Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Hinesley*, 999 N.E.2d at 982. When considering a claim of ineffective assistance of counsel, we strongly presume "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (citation omitted). We presume that counsel performed effectively, and a defendant must offer strong and convincing evidence to overcome this presumption. *Id.*

[9] We must acknowledge that the judge who presided over Nolan's original trial is also the judge who presided over the post-conviction proceedings, and therefore the post-conviction court's findings and judgment are entitled to "greater than usual deference." *Id.* (quoting *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied* (2013)). Indeed, we have explained that, in such a case, the judge is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness and whether, but for counsel's unprofessional conduct, there was a reasonable probability

that a different verdict would have been reached. *Id.* With this in mind, we turn to Nolan's multiple claims of ineffective assistance of trial counsel.

## Section 1.1 – Failure to communicate plea offer

[10] Nolan first alleges that his trial counsel rendered ineffective assistance in failing to communicate to him a plea offer from the State. As a general matter, defense counsel has the duty to communicate to the defendant a formal plea offer from the State, and failure to do so constitutes deficient performance. *Dew v. State*, 843 N.E.2d 556, 569 (Ind. Ct. App. 2006), *trans. denied*. Here, although Nolan submitted an exhibit indicating that the State orally offered a plea deal to Nolan's trial counsel,[2] the only evidence that counsel failed to communicate that offer to Nolan comes from Nolan's self-serving testimony. Nolan offered no affidavit or testimony from trial counsel to support his claim. When counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that counsel would not have corroborated the

---

[2] Petitioner's Exhibit 8, "State's Response to Petitioner's Interrogatory #3 Plea Offers" provides in relevant part:

1. That after reviewing its file, the State by its deputy prosecutor, Matthew Ely, conveyed the following plea offer orally to Petitioner's trial counsel:

> Offer B felony rape 10 suspend 2 do 8 consecutive
> C felony 4 suspend 1 do 3 consecutive
> D felonies 18 months a piece suspend 6 months 24 months to serve
> Total 17 years 4 years suspended do 13.
> inv run concurrent

2. That there is no evidence as to when the information in paragraph 1 was conveyed to Petitioner's trial counsel.

Ex. Vol. 2 at 44.

petitioner's allegations. *Culvahouse v. State*, 819 N.E.2d 857, 863 (Ind. Ct. App. 2004) (citation omitted), *trans. denied* (2005). The post-conviction court did not find Nolan's testimony on this matter credible and it is not our prerogative on appeal to second-guess that credibility determination. *Hinesley*, 999 N.E.2d at 981. Nolan has failed to show that counsel failed to communicate the plea offer and that such failure constituted deficient performance.

Moreover, even if a defendant establishes deficient performance in counsel's failure to convey a plea offer, the defendant must also establish prejudice. We have stated that a defendant satisfies the prejudice prong of *Strickland* if he shows that, but for counsel's failure to communicate, there was a reasonable probability that he would have accepted the plea offer. *Dew*, 843 N.E.2d at 571. Nolan was unequivocal in his post-conviction testimony that he would not have accepted the plea offer even had it been communicated to him. As specifically noted by the post-conviction court, Nolan has consistently maintained his innocence throughout all proceedings, and he conceded that he would not have admitted to any inappropriate conduct with K.F.D. We agree with the post-conviction court that, under the circumstances, Nolan has demonstrated neither deficient performance nor prejudice.

## Section 1.2 – Failure to object to amendment of charging information

Nolan next contends that his trial counsel was ineffective in failing to object to the State's "mid-trial" amendment to the charging information. Appellant's Br. at 19. Count III of the original information charged Nolan with child seduction

occurring between December 27, 2008, and January 1, 2009. On the third day of trial, the State sought leave to amend the date of Count III to between December 27, 2007, and January 1, 2008. Trial counsel responded that he had "no objection" to the State's request and explained that he learned during K.F.D.'s deposition in 2009 that she was originally "confused" as to the dates of the seduction and that counsel was on "constructive notice" as to the true dates. Direct Appeal Tr. Vol. 1. at 168. Later, just before calling his first defense witness, trial counsel further explained on the record,

> [the amendment] was not objected to by the defense as a trial strategy because in exchange for that, certain amounts of leeway were given with regard to the admissibility and weight of certain evidence that came in by way of not having witnesses here and submitting certified records in lieu of Rule 902. Therefore, that was a trial strategy employed by counsel in furtherance of his client's defense.

Direct Appeal Tr. Vol 2. at 345.

[13] Where a claim of ineffective assistance is based on counsel's failure to object, the petitioner must demonstrate that if an objection had been made, the trial court would have had no choice but to sustain it. *Little v. State*, 819 N.E.2d 496, 506 (Ind. Ct. App. 2004), *trans. denied*. Indiana Code Section 35-34-1-5(c) provides that "upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Nolan asserts that,

had his counsel objected, the trial court would have had no choice but to sustain the objection because the amendment prejudiced his substantial rights.

[14] A defendant's substantial rights "include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Erkins v. State*, 13 N.E.3d 400, 405-06 (Ind. 2014) (citation omitted). The ultimate question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id*. Here, as explained during trial, counsel was on notice of the time frame for the alleged child seduction and presumably prepared his presentation of evidence accordingly. Other than bald assertions of "possible alibis on the changed dates," Nolan has not demonstrated how the State's amendment prejudiced his substantial rights. Appellant's Br. at 21. Thus, he has not established that if an objection had been made, the trial court would have had no choice but to sustain it. *Little*, 819 N.E.2d at 506. Nolan has failed to demonstrate that his counsel's performance on this issue fell below an objective standard of reasonableness.

## Section 1.3 – Failure to procure witness

[15] Nolan contends his trial counsel rendered ineffective assistance in failing to properly subpoena and procure as a witness K.F.D.'s uncle, Brad Teeters. Teeters is a lawyer, and K.F.D. admitted that she spoke with Teeters before she submitted to her forensic interview with authorities. One of counsel's defense theories was that K.F.D. was coached by Teeters as part of Mother's plan to

frame and "set up" Nolan to gain an upper hand in their divorce. Appellant's Br. at 23.

[16] At the start of the fourth day of trial, trial counsel told the court that he had subpoenaed Teeters in Kentucky but that Teeters had not shown up, perhaps because he was now thought to be in South Carolina. Requesting to make an offer to prove, counsel explained,

> Your Honor, my first witness, uh, has to testify, part of his testimony contains 804 hearsay, um, and I want to do an offer of proof to the Judge to see if certain factors articulated in Rule 804-5 as to unavailability of a person as a witness to whom the (inaudible) will direct certain comments and testimony. In other words, it will be a conversation, or it will be testimony regarding a conversation that this witness had with Brad Teeters, who has been avoiding my subpoena to attend trial.

Direct Appeal Tr. Vol. 2 at 346.

[17] Counsel then called Nolan's father to make an offer to prove regarding a conversation he had with Teeters. Nolan's father said that he asked Teeters about what was "going to happen" with K.F.D.'s accusations against Nolan. Nolan's father relayed that,

> [Teeters] said, well right now she's accusing him of touching and oral sex and I said, what's that mean? [Teeters] said, if he confesses to this and goes along with it we will try to get everything to go as easy as we can for him. If he doesn't want to go to court, then if we can get penetration things will be bad.

*Id.* at 348. The trial court did not rule on whether Teeters was unavailable and took the matter under advisement. Trial counsel later informed the court during a sidebar that he had discovered that his assistant had never actually sent the subpoena to Teeters. He stated, "Therefore, as an officer of the Court[,] I have to represent to the Court that technically under the terms of the rules of evidence and the case law, that Brad Teeters is not unavailable." Supp. Tr. Vol. 2 at 303. Accordingly, Nolan's father's testimony was never presented to the jury.

[18]     Nolan argues that had Teeters testified at trial, "he may well have denied ever making those statements to [my father]. However, if trial counsel had subpoenaed [Teeters] to court and asked him if he ever made those statements, [my father] could have testified as to Teeters'[s] statements to him as impeachment." Appellant's Br. at 24. Nolan's complaint boils down to counsel's alleged inability to sufficiently put forth the defense theory that Teeters was part of Mother's plan to frame and "set up" Nolan with false accusations.

[19]     We do not disagree with Nolan that counsel's failure to properly subpoena Teeters and procure his attendance at trial was an unprofessional error. Counsel admitted as much to the trial court. However, we disagree with Nolan's contention that there is a reasonable likelihood that, but for counsel's failure to procure Teeters's attendance, the result of the trial would have been different. Through the questioning of multiple other witnesses, including K.F.D., Mother, and forensic interviewer Jeri Newton, trial counsel was able to

sufficiently explore and repeatedly emphasize the theory that K.F.D. was coached by Teeters regarding what to accuse Nolan of doing to her. Nevertheless, the jury was not persuaded. Under the circumstances, we agree with the post-conviction court that Nolan has not shown that Teeters's testimony (or impeachment thereof) on that same issue would have carried substantial weight against a finding of guilt for the offenses charged. Significantly, Nolan did not call Teeters as a witness at the post-conviction hearing, and did not submit an affidavit regarding what his testimony would have been had he testified. When ineffective assistance of counsel is alleged and premised on the attorney's failure to present a witness, it is incumbent upon the petitioner to offer evidence as to who the witness was and what his testimony would have been. *Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998). Nolan has not met his burden of establishing grounds for relief on this claim.

## Section 1.4 – Failure to move for mistrial

[20] During trial, Mother testified regarding how K.F.D. first disclosed to her that Nolan had molested her. Mother stated that, on May 20, 2009, she came home from work and was speaking to her daughters because "there was an event that occurred, that particular day, and um, that event, my two oldest daughters were aware of that event." Direct Appeal Tr. Vol. 1 at 187.[3] When asked "[w]hat

---

[3] Although Mother never referenced what the "event" was, Nolan asserts that she was obviously referring to the fact that the local newspaper published a story about pending charges against Nolan in Clark County.

did [K.F.D.] tell you, that occurred, between [her] and [Nolan,]" Mother testified that K.F.D. told her, "Mommy I know he's guilty." *Id.* at 189.

[21] Nolan argues that Mother's reference to "an event" clearly informed the jury that Nolan had committed another criminal act of the same nature as the acts K.F.D. alleged he committed against her. Because any reference to other criminal charges that had been filed against Nolan was prohibited by a motion in limine, Nolan argues that his trial counsel should have objected to Mother's testimony and moved for a mistrial.

[22] To prove ineffective assistance of counsel due to the failure to object and request a mistrial, Nolan must show that a request would have been granted had it been made. *Cf. Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007) (stating that to prevail on claim of ineffective assistance due to failure to object to evidentiary harpoon, defendant must show objection would have been sustained if made), *cert. denied* (2008). A mistrial is an extreme remedy that is warranted only when no other curative action can be expected to remedy the situation. *Lucio v. State*, 907 N.E.2d 1008, 1010-11 (Ind. 2009). A mistrial is required only where the defendant was placed in a position of grave peril to which he should not have been subjected. *Owens v. State*, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010), *trans. denied*. The gravity of the peril is determined by the probable persuasive effect on the jury's decision. *Id.*

[23] Nolan has not shown that the trial court would have sustained his objection and granted a motion for mistrial even had trial counsel made such request.

Mother's reference to "an event" was vague and made no mention of any criminal charges against Nolan. In fact, the deputy prosecutor carefully questioned Mother and repeatedly reminded her not to go into any specifics about the circumstances that prompted K.F.D. to disclose the molestation. We do not think Nolan was placed in a position of grave peril warranting a mistrial.

[24] Moreover, as Mother's reference to "an event" was vague as well as isolated, trial counsel would understandably not want to draw the jury's attention to it by objecting and then moving for a mistrial. This was a reasonable tactical decision. A decision to not object when the objection may be more damaging than the evidence is within the wide range of professionally competent assistance. *Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011). Nolan has failed to show ineffective assistance on this issue.

## Section 1.5 – Failure to object to testimony

[25] Nolan also contends that trial counsel rendered ineffective assistance in failing to object to Mother's testimony regarding his "kinky" sexual fantasies. Direct Appeal Tr. Vol. 1 at 230. He argues that Mother's testimony "tended to paint him as a person with prurient sexual preferences that could have inflamed the jury's passions against him." Appellant's Br. at 30. As we stated above, where a claim of ineffective assistance is based on counsel's failure to object, the petitioner must demonstrate that if an objection had been made, the trial court would have had no choice but to sustain it. *Little,* 819 N.E.2d at 506. Nolan argues that the trial court would have had no choice but to sustain a proper Rule 403 objection to the testimony. *See* Ind. Evid. Rule 403 ("The court may

exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice."). Regardless, our review of the record reveals that Mother's testimony on this subject was incredibly brief and not as "salacious" as argued by Nolan. Appellant's Br. at 31. We cannot conclude that there is a reasonable probability that the outcome of his five-day jury trial would have been different had counsel objected to this brief testimony.

[26] Additionally, we agree with the State that it appears that trial counsel may have intentionally not objected to Mother's testimony in this regard because he proceeded to impeach her on cross-examination with the dubious and hypocritical nature of her claims based on her own behavior during the parties' marriage. We cannot say that this strategy was unreasonable. Nolan has not overcome the presumption that counsel's performance was adequate.

## Section 1.6 – Failure to impeach witnesses

[27] Nolan makes numerous arguments regarding his trial counsel's alleged failure to adequately impeach various State witnesses. If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002). Thus, we decline to go into specific detail regarding the alleged deficiencies in trial counsel's impeachment methods regarding several of these witnesses because, based on the cumulative and circumstantial nature of most of that testimony, Nolan cannot establish that any isolated omissions or errors, poor strategy, or bad tactics prejudiced him. However, we will address Nolan's claims regarding counsel's impeachment of the victim, K.F.D.

[28]  Nolan asserts that his trial counsel failed to impeach K.F.D. and present evidence contradicting the timeline of her allegations in relation to the class C felony child molestation charge, which required the State to prove that K.F.D. was under fourteen years of age at the time. Specifically, Nolan argues that counsel could have introduced evidence of K.F.D.'s prior inconsistent statements to show that "her recollection of the date was equivocal." Appellant's Br. at 27. Nolan further asserts that trial counsel failed to impeach K.F.D. with her prior inconsistent statements regarding her claims of child seduction and rape.

[29]  Contrary to Nolan's claims, our review of the record reveals that, on cross-examination, trial counsel specifically questioned K.F.D. regarding equivocations in her memory regarding her age at the time of the alleged molestation, as well as her prior inconsistent statements regarding the time frame and circumstances of the child seduction and the rape. Indeed, counsel's cross-examination and attempted impeachment was very thorough yet appropriately sensitive to the nature of the charges and K.F.D.'s emotional demeanor. Despite these efforts, the fact remains that on direct examination, K.F.D. gave graphic testimony regarding Nolan's repeated acts of sexual misconduct against her. In short, the jury found her to be a credible witness and Nolan has not established a reasonable probability that the result of his trial would have changed had counsel done anything differently during cross-examination.

## Section 1.7 – Failure to present mitigating evidence during sentencing

[30] Finally, Nolan challenges his trial counsel's performance during the sentencing phase of his trial. Specifically, he complains that his counsel failed to proffer his education and steady employment as potential mitigating factors, and he asserts that had counsel done so, the trial court "likely" would have imposed a reduced sentence. Appellant's Br. at 34. Nolan has made no such showing.

[31] We note that evidence of Nolan's education and work history was part of the pre-sentence investigation report that was already before the trial court and specifically referenced by trial counsel during sentencing. Direct Appeal Tr. Vol. 3 at 533 ("The, uh, Pre-Sentence Investigation is, is very, uh, clear on its face as to what the, uh, Defendant's Story is."). Trial counsel chose to focus on Nolan's lack of criminal history as evidence in mitigation, and the trial court did find his lack of criminal history to be a mitigating factor. However, due to Nolan's "despicable and contemptible" abuse of a position of trust, and the particularized circumstances of his crimes, the trial court found that the aggravating factors "far outweigh[ed]" the mitigating factor. *Id*. at 551. It is well settled that a "trial court is not obligated to find the existence of mitigating circumstances, nor is it required to give the same credit as the defendant does to the defendant's proffered mitigating circumstances." *Singer v. State*, 674 N.E.2d 11, 14 (Ind. Ct. App. 1996). Based on the record before us, we are confident that the trial court would have given, at most, minimal weight, to Nolan's suggested mitigating factors. Nolan has not demonstrated a reasonable

probability that the trial court would have imposed a shorter sentence had trial counsel proffered his education and work history as mitigating factors. We agree with the post-conviction court that Nolan has not shown that he was denied the effective assistance of trial counsel.

## Section 2 – Nolan has not shown that his appellate counsel rendered ineffective assistance.

[32] Along with the many alleged failures of his trial counsel, Nolan also contends that his appellate counsel rendered ineffective assistance. Claims of ineffective assistance of appellate counsel are reviewed using the same standard applicable to claims of trial counsel ineffectiveness. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). These claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Hollowell v. State*, 19 N.E.3d 263, 270 (Ind. 2014). A claim of failure to present an issue well, as Nolan asserts here, is the most difficult for a defendant to advance and for a reviewing tribunal to support. *Id.* This is "because such claims essentially require the reviewing court to reexamine and take another look at specific issues it has already adjudicated" to determine if a new argument would have had "any marginal effect" on its previous decision. *Id.*

[33] Nolan argues that, in challenging the propriety of his sentence on direct appeal, appellate counsel should have argued that the trial court relied on improper aggravating circumstances. Specifically, the trial court found two aggravating circumstances: (1) the nature and circumstances of the crimes and the duration of the sexual abuse; and (2) that Nolan was in a position of care, custody, or

control of K.F.D. These are both proper aggravators. *See Phipps v. State*, 90 N.E.3d 1190, 1198 (Ind. 2018) (acknowledging that "the particular facts—the ongoing nature and length of [the] criminal conduct—can properly be considered in aggravation"); *Bacher v. State*, 722 N.E.2d 799, 802 n.5 (stating that being in a "position of trust" with the victim is a valid aggravating circumstance). Nolan cannot show that appellate counsel was ineffective for not challenging the trial court's sentencing decision on this basis.

[34] Nolan also complains that, in arguing for sentence revision pursuant to Indiana Appellate Rule 7(B), his appellate counsel pointed only to his lack of criminal history as evidence of his good character, and that counsel should have pointed out additional positive evidence of his character. However, Nolan has not persuaded us that, had appellate counsel highlighted his education, work history, and his mother's opinion that he was "kind hearted" and not a "danger to society," it would have had even a marginal effect on this Court's previous decision. Appellant's Br. at 39. Indeed, in reviewing his character, the panel looked to additional evidence in the record regarding Nolan's character and determined that he was known to be a "master manipulator" and a "liar." *Nolan*, slip op. at 8 (direct appeal). Accordingly, we do not think that, even had his counsel belabored arguments as to Nolan's good character, there is a reasonable probability that this Court would have revised his sentence.

[35] Nolan maintains that his appellate counsel also should have argued that the imposition of maximum and enhanced sentences on several counts was unwarranted because he was not the "worst of the worst." Appellant's Br. at

40. The record indicates that counsel did argue that enhanced and consecutive sentences were unwarranted, and we specifically rejected those arguments. Moreover, the appropriateness of Nolan's aggregate sentence was thoroughly reviewed and determined to be appropriate on direct appeal, with the panel essentially concluding that Nolan was, in fact, one of the worst offenders, in that he appeared "to have groomed K.F.D. over a five-year period to submit to his sexual desires…. The mental and emotional effect of such acts upon K.F.D. cannot be minimized." *Nolan*, slip op. at 8 (direct appeal) (record citation omitted). Under the circumstances, Nolan has not established that his appellate counsel performed deficiently. The post-conviction court properly concluded that Nolan was not denied the effective assistance of appellate counsel.

## Section 3 – Nolan is not entitled to a new trial based on newly discovered evidence.

[36] Finally, Nolan argues that he is entitled to post-conviction relief and a new trial based on newly discovered evidence. He asserts that although "clearly raised" in his petition for post-conviction relief, and "argued" in his proposed findings of fact and conclusions of law, the post-conviction court failed to address his newly discovered evidence claims in its findings. Appellant's Br. at 40-41. It does appear that the post-conviction court failed to specifically address the newly discovered evidence claims in its findings, and we believe that Nolan is entitled to be heard and receive a ruling on this issue. *See Hanks v. State*, 71 N.E.3d 1178, 1189 (Ind. Ct. App. 2017). Although a court errs in failing to enter specific findings of fact and conclusions of law on all issues raised in a

petition for post-conviction relief, such error is not reversible when the issue is sufficiently presented for review and addressed by the parties. *Jackson v. State*, 676 N.E.2d 745, 750 (Ind. Ct. App. 1997), *trans. denied*; *see also Lowe v. State*, 455 N.E.2d 1126, 1128 (Ind. 1983) (in interest of judicial economy "we shall make an ultimate determination of the arguments as raised … rather than remand to the trial court for further findings.") (quoting *Sims v. State*, 422 N.E.2d 436, 438 (Ind. Ct. App. 1981)). The issue here is sufficiently presented for our review, and therefore, rather than remand to the post-conviction court, we will address Nolan's claims of newly discovered evidence.

[37]   Post-Conviction Rule 1(1)(a)(4) provides that post-conviction relief is available to any "person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims" that "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." Newly-discovered evidence mandates a new trial only when the defendant demonstrates each of the following nine requirements:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Bunch v. State*, 964 N.E.2d 274, 283 (Ind. Ct. App. 2012) (citation omitted). "The reviewing court 'analyzes these nine factors with care, as the basis for

newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id*. (quoting *Taylor v. State*, 840 N.E.2d 324, 329-30 (Ind. 2006)). The burden to show all nine requirements rests with the post-conviction petitioner. *Id*. During the post-conviction proceedings, Nolan made three claims of newly discovered evidence that he argued entitles him to a new trial; (1) phone records; (2) a receipt; and (3) medical records. As we will discuss in more detail below, his arguments fail with respect to all three.

## Section 3.1 – Affidavit and phone records

[38] Nolan first contends that Shea Leffler's affidavit and accompanying phone records constitute newly discovered evidence entitling him to a new trial. At trial, Leffler testified that she went to the police station to report that Mother was framing Nolan for the crimes against K.F.D. Leffler stated that she left a message at the station asking the detectives to call her. Leffler testified that a person identifying himself as Detective Powell called her the following day, and she reported to him that Mother was having an extramarital affair and was framing Nolan. Detective Powell allegedly told Leffler to "stay out of it." Appellant's App. Vol. 4 at 178. In response, the State recalled the lead detective on the case, Detective Firkins, as a rebuttal witness, and he testified that he, as opposed to Detective Powell, spoke with Leffler. He stated that Leffler told him that Mother was "dating other people" but that Leffler did not say anything about Mother framing Nolan for the crimes. Direct Appeal Tr. Vol. 2 at 443.

[39] During the post-conviction proceedings, Nolan submitted an affidavit from Leffler with phone records attached. Leffler averred that incoming "call 283" listed on the records, which was received on December 16, 2009, was a call she received from Detective Powell and not from Detective Firkins. Nolan claims that Leffler's affidavit and the phone records about which detective she spoke with is crucial evidence to rehabilitate Leffler's credibility and to lend "support to [his] theory that the allegations against him were made-up." Appellant's Br. at 44.

[40] However, Nolan has not shown that the affidavit and accompanying phone records meet the necessary criteria for newly discovered evidence. Indeed, Nolan's sole assertion is that the evidence would be used to rehabilitate Leffler's credibility and to impeach Detective Firkins's rebuttal testimony regarding which detective Leffler spoke with. To warrant a new trial, newly discovered evidence cannot be merely impeaching. *Thompson v. State*, 796 N.E.2d 834, 840 (Ind. Ct. App. 2003), *trans. denied* (2004). This newly discovered evidence claim fails.

## Section 3.2 – Receipt

[41] Nolan's next claim of newly discovered evidence involves an alleged "receipt." Appellant's Br. at 44. Nolan was convicted of class C felony child molesting, an element of which is that the victim is under fourteen years of age. Ind. Code § 35-42-4-3(b). K.F.D. testified that Nolan molested her around the start of school in August of 2005, and she recalled that the molestation occurred after her home's basement remodel was finished because that was around the time

her sister had moved out of the bedroom they shared and into the basement. K.F.D. turned fourteen on October 24, 2005. During the post-conviction hearing, Nolan's father testified that he performed electrical work on the basement of the home. He produced a handwritten note, which he referred to as a "receipt," dated November 11, 2005, that he said that he "got from Robert C. Brown" for "the fuse box—the breaker box for [Nolan's] basement." PCR Tr. Vol. 2 at 25. Nolan argues that this evidence shows that the basement was not finished until after K.F.D. was fourteen years of age, and therefore he cannot be guilty of class C felony child molesting.

[42] We agree with the State that Nolan has not met his burden to show that this evidence is worthy of credit. Nolan's father is not a disinterested witness, and Nolan produced no witness at the post-conviction hearing that could verify the authenticity of the note, including its date. Contrary to Nolan's assertion, it was not the State's burden to challenge the authenticity of the note; it was his burden to demonstrate its authenticity and that it is worthy of credit. He failed to do so. Moreover, while the note may have called into question K.F.D.'s recollection regarding the status of the basement remodel at the time of the molestation, evidence that simply calls prior testimony into question does not amount to newly discovered evidence that requires a new trial. *Cf. State v. McCraney*, 719 N.E.2d 1187, 1190 (Ind. 1999) (determining that witness's complete recantation of prior testimony was more than impeaching because it was freestanding evidence of innocence that obliterated the witness's own prior, inculpatory testimony). This newly discovered evidence claim also fails.

## Section 3.3 – Medical records

[43] Nolan's final claim of newly discovered evidence involves certified medical records which reveal that Mother was discharged from the hospital at 1:50 p.m. on January 1, 2008. K.F.D. testified at trial that Nolan forced her to perform or submit to oral sex on January 1, 2008, while Mother was in the hospital. He argues that evidence of the discharge time and date is material and relevant because it renders it "unlikely" that he forced K.F.D. to perform or submit to oral sex on that date after Mother was discharged and returned home. Appellant's Br. at 52. However, this evidence does not foreclose the possibility that Nolan forced K.F.D. to perform or submit to oral sex on that date before Mother was discharged, which would be entirely consistent with K.F.D.'s testimony. Thus, the medical records are hardly the smoking gun of reasonable doubt that Nolan hopes they are.

[44] In sum, Nolan has not shown that the medical records, or any of his other claimed newly discovered evidence, will probably produce a different result at retrial. "[T]he defendant must raise a strong presumption that the result at any subsequent trial in all probability would be different." *Reed v. State*, 702 N.E.2d 685, 691 (Ind. 1998). "A sufficient probability of a different result upon retrial is present where the omitted evidence creates a reasonable doubt that did not otherwise exist." *Fox v. State*, 568 N.E.2d 1006, 1008 (Ind. 1991). We cannot say that any of Nolan's claimed newly discovered evidence creates reasonable doubt that did not otherwise exist. Therefore, Nolan has not demonstrated that

he is entitled to a new trial. In light of the foregoing, we affirm the post-conviction court's denial of Nolan's petition for relief.

[45] Affirmed.

Bailey, J., and Brown, J., concur.