ATTORNEYS FOR APPELLANT
Stephen T. Owens
Public Defender of Indiana

Tracy Anne Nelson
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Eric Parker Babbs
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 26 2017, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## In the
## Indiana Supreme Court

No. 71S05-1606-PC-360

DEMAJIO ELLIS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Superior Court, No. 71D03-1301-PC-1
The Honorable Jerome Frese, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 71A05-1511-PC-1845

**January 26, 2017**

**Rucker, Justice.**

Petitioner appeals the denial of post-conviction relief contending his plea of guilty to four class A felony offenses was invalid because at the time Petitioner entered the plea he also professed his innocence. We agree and reverse the judgment of the post-conviction court.

**Facts and Procedural History**[1]

On November 9, 2010, the State charged eighteen-year-old Demajio Ellis and his sixteen-year-old cousin, Shawn Alexander, with two counts of attempted murder as class A felonies and two counts of attempted robbery resulting in serious bodily injury also as class A felonies. As alleged by the State, the essential facts supporting the charges are these.[2] In the evening hours of November 6, 2010, three young men—Jerry Atwood, Jason Kleinrichert, and Chad Nickerson— were present at a McDonald's restaurant in South Bend when they were confronted by two other young men who identified themselves as members of a street gang and accused Nickerson of belonging to a rival gang. Nickerson denied the accusation and the confrontation ended without further incident. The trio proceeded to Nickerson's house and left him there.

A short time later Atwood and Kleinrichert began walking towards Kleinrichert's house when they saw the same two young men whom they had encountered earlier at McDonald's. One of the young men was later identified as Alexander and the other as Ellis. The two approached Atwood and Kleinrichert and demanded cigarettes. When they responded they did not have any cigarettes Alexander and Ellis forced the two young men into a nearby abandoned building and began searching their pockets. The only thing the assailants found was a small pocketknife in Kleinrichert's pocket, which they took. The assailants then forced Atwood and Kleinrichert to step outside the building and made them kneel down. Again identifying themselves as members of a street gang and after demanding information about Nickerson, the assailants began choking Atwood and Kleinrichert from behind. As the two young men began losing consciousness, the assailants slashed their throats from behind and fled on foot. Both

---

[1] "Tr." refers to the Plea Hearing Transcript which was introduced as an exhibit at the post-conviction hearing.

[2] The facts represent a condensed version of the probable cause affidavit submitted by the State in support of its request for a higher than standard bond. See Appellee's App. at 6-8. As will be seen later in this opinion a full recitation of the facts and the sequence of events are not readily ascertainable from the Trial Transcript or Post-Conviction Transcript.

Atwood and Kleinrichert made it to Nickerson's house which was nearby. Medics and police responded to the house and the young men were transported to a local hospital for treatment. Thereafter police showed a photo lineup to Kleinrichert who identified Alexander saying, "That's him! That's the one who slashed my throat!" Appellee's App. at 8.

Ellis entered an agreement with the State that called for him to plead guilty to all four class A felony offenses. Except for a cap of fifty years on any executed term, the parties were free to argue sentencing which was otherwise left to the discretion of the trial court. The agreement also provided that Ellis would agree to testify at the trial of his cousin, Shawn Alexander, and that the State would not file additional charges stemming from two unrelated South Bend Police Department investigations. At the change of plea hearing conducted May 11, 2011, the trial court advised Ellis of the offenses with which he was charged, the rights he was forfeiting by a plea of guilty, and that his maximum exposure absent the benefit of an agreement was 116 years. See Tr. at 8-13. Although pleading guilty to all four counts, when asked about his involvement in the events leading to charged crimes, Ellis stated in part: "I didn't do nothing, you know, sir. I was involved to the point that I did hit somebody, but I didn't cut nobody. I did not rob nobody, sir." Tr. at 23. And when specifically asked about his knowledge of and participation in the assaults that Alexander committed against the victims, Ellis affirmed: "I did tell him don't do it, sir, you know." Tr. at 25. The trial court took the plea under advisement.

On June 22, 2011, the trial court conducted a sentencing hearing at which Ellis again expressed his innocence and indicated that he wished to withdraw his plea of guilty. After an extended back and forth colloquy with the trial court, Ellis reversed course and decided not to withdraw his guilty plea. Pursuant to the terms of the agreement the trial court sentenced Ellis to one hundred years imprisonment with sixty years suspended to probation for an aggregate sentence of forty years executed.[3]

---

[3] The trial court sentenced Ellis to fifty years on Counts 1 and 2 to run consecutive to each other with sixty years suspended. The trial court entered judgments of conviction for Counts 3 and 4 as class C felonies and Ellis was sentenced to eight years on each to run consecutive to each other but concurrent to the attempted murder convictions.

3

In 2013 Ellis filed a *pro se* petition for post-conviction relief that was later amended by counsel. The amended petition challenged Ellis' plea in three respects: (1) it was not entered knowingly, intelligently, and voluntarily; (2) the plea lacked a factual basis; and (3) the trial court erred in accepting the plea in light of Ellis' protestations of innocence. After a hearing at which Ellis testified on his own behalf, the post-conviction court ultimately entered an order denying relief. It issued no findings of fact and conclusions thereon with respect to Ellis' third claim. On appeal Ellis raised a single issue, namely whether the trial court committed reversible error in accepting Ellis' guilty plea in light of his protestation of innocence. In a memorandum decision the Court of Appeals affirmed the judgment of the post-conviction court. See Ellis v. State, 50 N.E.3d 154 (Ind. Ct. App. 2016) (Table). Having previously granted transfer, we now reverse the judgment of the post-conviction court. Additional facts are set forth below.

**Standard of Review**

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Graves v. State, 823 N.E.2d 1193, 1197 (Ind. 2005). Where the post-conviction court makes findings of fact and conclusions of law as required by Post-Conviction Rule 1(6)[4] we will reverse its findings only upon a finding of clear error, namely "that which leaves us with a definite and firm conviction that a mistake has been made." Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000). However where, as here, the post-conviction court fails to enter specific findings of fact, but the facts underlying the claim are not in dispute, the issues are sufficiently clear, and both parties address the merits in their briefs, then we review the claim *de novo*. Allen v. State, 749 N.E.2d 1158, 1170 (Ind. 2001).

---

[4] The rule provides in relevant part: "The court shall make specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held."

4

**Discussion**

**I.**

In this appeal Ellis abandons his claim that his plea of guilty was not entered knowingly, intelligently, and voluntarily as well as his claim that there was no factual basis to support the plea. Instead Ellis focuses on a single allegation of error: the trial court's acceptance of Ellis' plea in light of his protestation of innocence.

Over half a century ago, we declared: "[A] plea of guilty tendered by one who in the same breath protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all. Certainly it is not a sufficient plea upon which to base a judgment of conviction." Harshman v. State, 115 N.E.2d 501, 502 (Ind. 1953). We later expounded that as a matter of law, "a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time. To accept such a plea constitutes reversible error." Ross v. State, 456 N.E.2d 420, 423 (Ind. 1983). In other words, a trial court errs in accepting a guilty plea to a charge when the defendant protests his innocence while simultaneously attempting to enter the plea.

Because the issue has not been pressed on appeal, we do not rest our conclusion of the impropriety of Ellis' plea based on the adequacy of the factual basis for acceptance of the plea. However, the evidence introduced to establish the factual basis informs our discussion of Ellis' protestation claim.

This Court has held that "[a] proper factual basis for the entry of a guilty plea is established where the court asks the prosecutor to state the facts and the prosecutor reads the factual allegations contained in the information, the judge asks the defendant whether he admits the alleged acts, and the defendant admits the truth of the information."[5] Silvers v. State, 499

---

[5] This Court has recognized four methods for eliciting evidence to prove a factual basis to support a guilty plea. Rhoades v. State, 675 N.E.2d 698, 700 n.3 (Ind. 1996) (quoting Minor v. State, 641 N.E.2d 85, 89 (Ind. Ct. App. 1994) (citations omitted), trans. denied). First, the State may present evidence on the elements of the charged offenses. Id. Second, the defendant's admission of the truth of the allegations in the information read in open court would suffice. Id. Third, the defendant's acknowledgment that he/she

N.E.2d 249, 253 (Ind. 1986) (citing <u>Lowe v. State</u>, 455 N.E.2d 1126, 1129 (Ind. 1983)). Nevertheless, the trial court may base its decision on the testimony given by the defendant on an inquiry alone, so long as the questions asked are sufficiently detailed to show the defendant's guilt, but those questions requiring only a yes or no reply may be found insufficient. <u>Butler v. State</u>, 658 N.E.2d 72, 77 n.14 (Ind. 1995) (citing <u>State v. Durham</u>, 498 P.2d 149, 151 (Ariz. 1972); John L. Barkai, <u>Accuracy Inquiries for all Felony and Misdemeanor Pleas: Voluntary Pleas but Innocent Defendants?</u>, 126 U. Pa. L. Rev. 88, 135-36 (1977)).

The evidence presented at the change of plea hearing to establish the factual basis for Ellis' plea is as follows:

> Trial Court:      Can we have a factual here?
>
> [Defense Counsel]:    Mr. Ellis, back on November the 6th of last year you were with Shawn Alexander; is that right?
>
> Mr. Ellis:           Yes, sir.
>
> [Defense Counsel]:    And sometime during that night you two met up with guys named Jerry and Jason at McDonald's originally on South Michigan Street; is that right?
>
> Mr. Ellis:           Yes, sir.
>
> [Defense Counsel]:    And then later when you guys were walking along by Riley High School you saw those two again?
>
> Mr. Ellis:           Yes, sir.
>
> [Defense Counsel]:    Now we know part of what you're charged with is that you aided Shawn in doing things, that he's the main one who was involved in doing this; is that right?
>
> Mr. Ellis:           Yes, sir.
>
> [Defense Counsel]:    And the first thing that was done I guess is he somewhat forced these guys to go into a vacant house; is that right?

---

understands the nature of the crimes charged and that his/her plea is an admission of those charges. <u>Id.</u> And fourth, the defendant's sworn testimony regarding the events underlying the charges may likewise show his/her commission of the acts giving rise to the charged crimes. <u>Id.</u>

6

Mr. Ellis:          Yes, sir.

[Defense Counsel]:    And then later out into an alley I guess. Right?

Mr. Ellis:          Yes, sir.

[Defense Counsel]:    At some point he -- well, tell me what he did.

Mr. Ellis:          Okay. It started off earlier when we were at McDonald's. Later on we seen them. We was walking down St. Joe, and they was walking down Calvert Street. He called their name. We went up to them, and we was like what's up, you know, we seen ya'll earlier, you know.

Then the police ran past us coming from St. Joe going down Calvert. So Shawn and I started walking off. I guess he thought the police were called. Somebody called the police. Because, you know, at this time he had one of they knives, you know. I guess he thought that, you know, maybe somebody called the police [sic] said that he went in they pocket or whatever. So then --

[Defense Counsel]:    You said he had one of their knives. How did he get one of their knives?

Mr. Ellis:          I guess he took it out the pocket. Because, you know, we walked up, and, you know, I didn't speak to them at McDonald's, and like, you know, he knew who they was from McDonald's like.

Like from the story I didn't do nothing, you know, sir. I was involved to the point that I did hit somebody, but I didn't cut nobody. I didn't rob nobody, sir.

[Defense Counsel]:    Okay. At some point Shawn Alexander had a knife either that he got from them or he had before and he cut both their throats; is that right?

Mr. Ellis:          Yes, sir.

[Defense Counsel]:    Okay. Not to the point that they were dead because they got up and got away. But he cut their throats. Right?

7

Mr. Ellis:                Yes, sir.

[Defense Counsel]:    And part of cutting their throats was that you guys either attempted or did take some property from them. Right?

Mr. Ellis:                Yes, sir.

*     *     *

[Defense Counsel]:    Now, your involvement in this is that you were there for one thing, and you did hit or kick one of the individuals; is that right?

Mr. Ellis:                Yes, sir.

[Defense Counsel]:    And are you admitting by just being there and by your assault on one of the individuals you aided Shawn Alexander in doing the things that he did? You essentially helped him do what he did?

Trial Court:             Well, you didn't go away and say cut this out or --

[Defense Counsel]:    Right. You didn't stop him?

Trial Court:             -- argue it or anything?

Mr. Ellis:                I did tell him don't do it, sir, you know.

Trial Court:             Well, but you still stayed around. You did hit one of them or kick them or something?

Mr. Ellis:                Yes, sir.

Trial Court:             Why did you do that?

Mr. Ellis:                You know --

Trial Court:             Being stupid?

Mr. Ellis:                You know, it was my decision I made to do.

Trial Court:          Okay.  Okay.  All this was here in South Bend.  Right?

Mr. Ellis:            Yes, sir.

Trial Court:          Okay.  Are you okay on the factual? What was the -- oh, serious bodily injury, was it?  Was it serious bodily injury?

[Deputy Prosecutor]:  Yes.

Trial Court:          Surely if somebody takes a knife and cuts your throat even a little bit, that's pretty serious stuff; wouldn't you agree?

Mr. Ellis:            Yes, sir.

Trial Court:          I mean you could hit a carotid or whatever. Right?

Mr. Ellis:            Uh-huh.

Trial Court:          And he cut both of them?

Mr. Ellis:            Yes, sir.

Trial Court:          Gees.  That's terrible.  Okay. All right.  Yes?  What?

[Deputy Prosecutor]:  Your Honor, the State does generally agree with Mr. Ellis.  Based on lots of the interviews and victims in this case and in the other ones, we do believe that Mr. Alexander was the primary actor.  But it is also the State's position that Mr. Ellis was a part of it, did act to help to assist, aid, and that's what he's agreeing to today is my take on this.  Is that correct?

Mr. Ellis:            Yes, sir.

Trial Court:          Yeah, I guess the bottom line on it, Demajio, is you didn't stay there because you were afraid that he'd kill you if you tried to leave or something?  That wasn't the situation?

Mr. Ellis:            No, sir.

Trial Court:          You had made a very bad decision?

9

|                |              |
|----------------|--------------|
| Mr. Ellis:     | Yes, sir.    |
| Trial Court:   | Okay. All right. Let's get a pre-sentence report. |

Tr. at 21-27. As can be seen from the foregoing exchange the State presented no evidence establishing the elements of the crimes. Neither the contents of the charging information, nor the facts as alleged in the probable cause affidavit were read during the guilty plea hearing. And at no time was Ellis asked to affirm the truth of the allegations therein. As a result, the evidence presented rests solely on the strength of Ellis' testimony and his admission of guilt to the charges.

It is also instructive that although the record shows Ellis was charged as a principal, the apparent theory under which he pleaded guilty was that of an accomplice.[6] "Under the

---

[6] The charging information provides in relevant part:

### COUNT I

. . . DEMAJIO JEROME ELLIS acting with the intent to commit the crime of murder, which is intentionally killing another human being, cut the throat of Jerry Atwood, which was a substantial step toward the commission of the crime of murder.

\*       \*       \*

### COUNT II

. . . DEMAJIO JEROME ELLIS acting with the intent to commit the crime of murder, which is intentionally killing another human being, cut the throat of Jason Kleinrichert, which was a substantial step toward the commission of the crime of murder.

\*       \*       \*

### COUNT III

. . . DEMAJIO JEROME ELLIS acting with the intent to commit the crime of robbery, which is taking property from the presence of another person by using or threatening the use of force, forcibly searched the pockets of Jerry Atwood for items to take and Jerry Atwood suffered serious bodily injury during the incident, namely a cut across the front of his throat, and DEMAJIO JEROME ELLIS' actions constituted a substantial step toward the commission of the crime of Robbery.

\*       \*       \*

10

accomplice liability statute, a person 'who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense.'" Wieland v. State, 736 N.E.2d 1198, 1202 (Ind. 2000) (quoting Ind. Code § 35-41-2-4). Unlike other crimes "this court has singled out attempted murder for special treatment." Hopkins v. State, 759 N.E.2d 633, 637 (Ind. 2001). And we have declared that "in order to establish that a defendant aided, induced, or caused an accomplice to commit attempted murder, the State must prove that the defendant, *with the specific intent that the killing occur*, knowingly or intentionally aided, induced, or caused his accomplice to commit the crime of attempted murder." Bethel v. State, 730 N.E.2d 1242, 1246 (Ind. 2000) (emphasis added). In other words, to establish a factual basis for the offense of aiding an attempted murder, the evidence must prove: "(1) that [Alexander], acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that [Ellis], acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused [Alexander] to commit the crime of attempted murder." Id.

There is no dispute that Alexander took a substantial step toward the act of murder by cutting the victims' throats. However, the transcript is entirely devoid of evidence showing Ellis' "specific intent that the killing occur." Ellis' mere presence during the commission of the crime is insufficient even under a theory of accomplice liability. See Castillo v. State, 974 N.E.2d 458, 466 (Ind. 2012) ("That a defendant was present during the commission of a crime and failed to oppose the crime is not sufficient to convict [him]."). Without a showing of Ellis' specific intent that Alexander commit the killings, the factual basis is incomplete. See D.A. v. State, 967 N.E.2d 59, 64 (Ind. Ct. App. 2012) (explaining that because "[t]here was no testimony or mention during the plea hearing regarding the intent to arouse or satisfy sexual desires

---

COUNT IV

> . . . DEMAJIO JEROME ELLIS acting with the intent to commit the crime of robbery, which is taking property from the presence of another person by using or threatening the use of force, forcibly searched the pockets of Jason Kleinrichert for items to take and Jason Kleinrichert suffered serious bodily injury during the incident, namely a cut across the front of his throat, and DEMAJIO JEROME ELLIS' actions constituted a substantial step toward the commission of the crime of Robbery.

Appellee's App. at 3-5 (Charging Information at 1-3).

11

element of child molesting . . . there [wa]s not even minimal evidence from which the court could reasonably conclude that D.A. committed child molesting").

But more to the point, during the course of the change of plea hearing, Ellis was adamant, "I didn't do nothing, you know, sir. I was involved to the point that I did hit somebody, but I didn't cut nobody. I did not rob nobody, sir." Tr. at 23. It is clear that at the same time Ellis was pleading guilty he was also professing his innocence. The State does not seriously contest this point. Instead the State insists that Ellis did not "consistently" maintain his innocence. See, e.g., Br. of Appellee at 18 ("[T]he defendant's protestation of innocence must have been consistent and unequivocal." (citation omitted)); Id. at 19 ("Looking at the statements Ellis made during the plea hearing, he did not consistently maintain his innocence."); Id. at 20 ("At the guilty plea hearing, Ellis also did not consistently deny the elements of Attempted Murder as an accomplice."); Resp. to Pet. to Trans. at 4 ("Ellis did not consistently assert his innocence during the guilty plea hearing, and his equivocations and his later sentencing hearing do not establish a basis for post-conviction relief.").

To support its contention that Ellis did not "consistently" maintain his innocence, the State relies on Carter v. State, 739 N.E.2d 126 (Ind. 2000). But its reliance is misplaced. In that case the defendant pleaded guilty to voluntary manslaughter. "He was fully and properly advised of his constitutional rights and the implications of his plea. He affirmed that the plea was made freely and voluntarily, and without duress. [And] [h]e gave a factual account of the circumstances of the crime." Id. at 127-28 (internal citations omitted). At sentencing Carter sought to withdraw his plea, saying he was innocent and declaring he pleaded guilty only upon the urging of his lawyer. Id. at 128. This Court reaffirmed "that an Indiana trial court may not accept a guilty plea that is accompanied by a denial of guilt" but this rule "is explicitly contingent, however, upon the protestation of innocence occurring at the same time the defendant attempts to enter the plea." Id. at 129. Rejecting the defendant's protestation of innocence claim, the Court declared:

> There is a substantive difference between a defendant who maintains innocence
> but asks the court to impose punishment without trial, and one who concedes guilt
> in one proceeding but contradicts that admission by claiming innocence in a later

proceeding. In the former case, the defendant has consistently denied culpability, and has therefore never made the reliable admission of guilt that Indiana requires. In the latter case, a defendant under oath has told the court two opposing stories, both of which cannot be true.

Id. at 130. Here, it is true that Ellis denied his culpability at the later sentencing hearing. But this was no more than a continuation of the same claim made at the change of plea hearing. In other words, unlike the defendant in Carter, Ellis did not "concede[] guilt in one proceeding but contradict[] that admission by claiming innocence in a later proceeding." Id. Instead Ellis claimed innocence in both proceedings.

We repeat for emphasis, "a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time." Ross, 456 N.E.2d at 423. As we have declared:

> A requirement that a guilty plea manifest an unqualified admission of guilt does not exalt form over substance. It implements fundamental notions of due process essential to the fair and just administration of criminal law. It protects a defendant's right to require proof of his guilt before a jury. It also obviates a collateral attack on a judgment by a later claim the plea was too equivocal to bind the pleader and permit entry of judgment.

Patton v. State, 517 N.E.2d 374, 376 (Ind. 1987).

At the guilty plea hearing, Ellis expressly asserted he "didn't cut nobody" and he "did not rob nobody." He further professed that he tried to stop the attack by telling Alexander "don't do it." These statements equate to a denial of culpability on Ellis' part and we cannot ignore such repudiations even though the defendant contributed to his own demise by pleading guilty. See Norris v. State, 896 N.E.2d 1149, 1154 (Ind. 2008) (Boehm, J., concurring in result) ("Any system of justice must allow for correction of injustice based on clear and convincing evidence of innocence, even if the defendant can be said to have contributed to his own plight by pleading guilty."). In sum, the declarations here are a denial of culpability such that Ellis "never made the reliable admission of guilt that Indiana requires." Carter, 739 N.E.2d at 130. And where Ellis' "guilty plea [wa]s accompanied with a protestation of innocence and unaccompanied by

evidence showing a factual basis for guilt, the trial court should [have] never accept[ed] it." Boles v. State, 303 N.E.2d 645, 654 (Ind. 1973).

## Conclusion

On *de novo* review we conclude that by a preponderance of the evidence the petitioner has demonstrated that the evidence as a whole leads unerringly and unmistakably to the conclusion the post-conviction court erred in denying his petition for relief. We therefore reverse the judgment of the post-conviction court and remand this cause for further proceedings.

Rush, C.J., and David, Massa and Slaughter, JJ., concur.