

**FILED**

Mar 21 2019, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Hope Fey
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Hooker,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 21, 2019

Court of Appeals Case No.
18A-PC-2318

Appeal from the Vanderburgh
Circuit Court

The Hon. David D. Kiely, Judge

The Hon. Kelli E. Fink, Magistrate

Trial Court Cause No.
82C01-0812-PC-18

**Bradford, Judge.**

# Case Summary

[1]     In October of 2001, the State entered into a plea agreement with David Hooker, pursuant to which he would plead guilty to Class C felony burglary. At the change-of-plea hearing, while Hooker denied having to push the already-open door to gain entry to the residence in question, he did admit that he had squeezed through the opening. The trial court accepted Hooker's guilty plea. In 2017, Hooker filed an amended petition for post-conviction relief ("PCR") in which he claimed that the trial court erred in accepting his guilty plea because he had denied his guilt at the hearing. The post-conviction court concluded that Hooked had not simultaneously maintained his innocence when he pled guilty to Class C felony burglary and denied his PCR petition. Hooker contends that the post-conviction court's conclusion is clearly erroneous. Because we disagree, we affirm.

# Facts and Procedural History

[2]     On October 1, 2001, the State charged Hooker with Class B felony burglary and Class D felony theft. Hooker and the State reached a plea agreement pursuant to which Hooker would plead guilty to Class C felony burglary in exchange for dismissal of the theft charge. At the time, Indiana Code section 35-43-2-1 provided that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony."

[3] A change-of-plea hearing was held on November 2, 2001. Then-Judge *pro tempore* Kelli Fink asked Hooker, "[D]id you break and enter a building that was owned by [Z.M.]?", to which Hooker replied, "[y]es." Prior App. p. 12.[1] When Judge Fink asked Hooker again whether he had broken into the building, Hooker's counsel interjected that Hooker "would not say he broke into the building" but that counsel's "understanding of the law is that you do not have to break into the building [and] if he was in a building with the intention to commit a felony, that is sufficient." Prior App. p. 13. The following exchange occurred:

> [The State]: He may have used some force to gain entry which might have been as simple as pushing a door open which was closed.
>
> [Judge Fink]: Right. How did he gain entry into the building?
>
> [Hooker's counsel]: You went through a door, right?
>
> [Hooker]: Yeah
>
> [Judge Fink]: Did you go through a door?
>
> [Hooker]: Yes.
>
> [Judge Fink]: Did you push the door open?
>
> [Hooker]: It was …
>
> [Hooker's counsel]: It was open wasn't it?
>
> [Judge Fink]: Did you push the …

---

[1] The appellate record includes a scanned appendix from a previous appeal, which contains the transcripts from the change-of-plea and sentencing hearings. We shall refer to this document as "Prior App." and cite to the handwritten page numbers therein.

[Hooker]: No, it was open. It had a box that was against the door. The door thing was open, it had a box against and some kind of metal thing was behind the door, I don't …

[Judge Fink]: Okay, did you have to physically touch the door and push it open in order to …

[Hooker]: No.

[Judge Fink]: … gain entry?

[Hooker]: No, it was already open. Now I moved by the door. I remember the door was … you've got to squeeze through there to get in.

Prior App. pp. 13–14.

[4] Counsel requested a recess, and, when the hearing resumed, Hooker said that he wanted to plead guilty. The State read the factual basis into the record, followed by more discussion between Hooker and Judge Fink:

[The State]: Your Honor, if this were to proceed at trial the State would call the owner of the residence, or the renter of the residence who had a contractual interest in it, a woman by the name of [Z.M.] and she'd testify that she was moving out, had left some items in the house behind and the State believes that she would testify that the door was closed when she left the residence at the last time she was there. The State would also call a witness by the name of David Mills who lived across the street from the burglarized residence and he would testify that at approximately 11:00 when he went to bed he didn't notice anything unusual about the residence, but at 1:00 to 1:30 in the morning he heard some dogs barking and his own dogs were indicating something was unusual going on. He looked out and saw that the house at 1607 Evans, the door was open and that there was a red car parked in the alley way there that had not been there earlier at 11:00 when he went to bed. He also saw a set of hands that were reaching out through the opened rear door stacking items on the back porch and he contacted the police.

When the police arrived, Officers Hoehn and several other officers with the Evansville Police Department arrived, looked around the residence, didn't have any luck or get any response and the officer finally entered through the back of the house and called out and the defendant finally did come out from inside the residence, and that's where he was located when officers arrived. The State heard and the Court heard the statements by the defendant earlier, and through the case law I believe the Court can establish a factual basis through the statements having been given by the defendant. He indicated that he did have to squeeze in to get into the residence. [….] He did place himself in a position to commit a felony inside. He did commit the entering element. He did ... he was found inside. He did indicate earlier that he was inside the residence and he did in fact commit a felony by committing theft. Several items that were originally inside the house including a circular saw, some stereo equipment and an area rug were found inside the defendant's vehicle which was parked in the alleyway outside the house to show the element of theft.

[….]

[Judge Fink]:     The agreement [is] that you plead guilty to Burglary as a Class C felony, which means you did break and enter the building and […] structure on October 8th, 2001 […] with the intent to commit a felony therein, to-wit Theft, contrary to Indiana law. Do you understand that's a lesser included offense of Burglary a C felony that I've read to you?

[Hooker]:     Yes.

[Judge Fink]:     Do you want to plead guilty to that offense?

[Hooker]:     Yeah.

[Judge Fink]:     Now, based on the evidence that the State has read to you, do you still want to plead guilty to that offense?

[Hooker]:     Ain't got no choice, yeah. Yes.

[Judge Fink]: Well, you always have a choice, Mr. Hooker, and that's what's very important for you to understand is that you have a choice and we can go to trial Monday if you want to.

[Hooker]: I have a choice, but yes I'll take it.

[Hooker's counsel]: Well, are you aware Mr. Hooker that I'm prepared to go to trial on Monday? You know, I've met with the witnesses, I'm prepared to go. I'm not necessarily recommending that[,] but you need to understand that I'm ready to go on Monday.

[Hooker]: I understand.

[Judge Fink]: And that as I have explained to you and the State of Indiana, they're not going to allow you to take a plea negotiation and deny that you did these things, do you understand?

[Hooker]: Yes.

[Judge Fink]: And if you are innocent you should say that and go to trial.

[Hooker]: But if I did that still if I get hit, I […] ma'am, that's twenty-three years I'd be facing. I'll take this. I'll take this.

[Judge Fink]: Well, what's very important, sir, is whether or not you committed the offense. Do you believe you committed the offense of Burglary, a Class C felony?

[Hooker]: Somewhat yes.

[Judge Fink]: Okay, what was …

[Hooker]: I … I did it. I done that.

[Judge Fink]: I don't want you to plead guilty to anything that you don't believe you're guilty of, okay?

[Hooker]: If I …

[Judge Fink]: If you're innocent of something then I don't want to take your plea.

[Hooker]: Ma'am, if I was innocent it wouldn't make a difference now because of what he has it doesn't matter, I would still be found guilty, so I …

[Judge Fink]: But I did not … I cannot accept your plea …

[Hooker]: I'm saying I did it.

[Judge Fink]: … unless you admit that you committed the offense.

[Hooker]: I did it, ma'am.

[Judge Fink]: You want to admit that you committed the offense of Burglary as a Class C felony?

[Hooker]: Yes.

[Judge Fink]: And you've heard the facts from the State of Indiana?

[Hooker]: Yes.

[Judge Fink]: Do you have any comments regarding those facts?

[Hooker]: No ma'am.

[Judge Fink]: Anything else, [State]?

[The State]: No ma'am.

[Judge Fink]: This happened here in Vanderburgh County?

[Hooker]: Excuse me?

[Judge Fink]: Vanderburgh … happened in Vanderburgh County, is that correct?

[Hooker]: Yes ma'am.

[Judge Fink]: And the State of Indiana?

[Hooker]: Yes ma'am.

[Judge Fink]: And do you admit that you were in that residence in order to commit the crime of theft?

[Hooker]:        Yes I was.

[Judge Fink]:        Show the Court at this time finds a factual basis for Count I, actually the lesser[–]included offense of Count I Burglary, a Class C felony.

Prior App. pp. 15–17, 18–21. Judge Fink advised Hooker of his rights and set the matter for a sentencing hearing on December 5, 2001.

[5]     At the December 5 hearing, then-Magistrate David Kiely engaged in the following exchange:

[Hooker]:        Okay, now starting out, as far as this incident is concerned, initially, I want you to know that initially I didn't go there to rob these people or steal anything from them, I went there because me and [the person to whom I am engaged], we were looking for a house for us and the kids and I didn't break in either as far as kick any doors in or anything of that nature, and we're talking about a house that was for rent, it was advertised in the paper, I have the article here if you would like to see it, I have the article for the day before of which we got it out of the paper, okay, that's how I found out about the house.

[Magistrate Kiely]: You opened the door?

[Hooker]:        No, it was open.

[Magistrate Kiely]: Now, […] you were in front of Judge [Fink[2]] and [s]he found a factual basis or you admitted to him that you committed this crime?

[Hooker]:        I'm saying I did it, but what I'm saying is …

[Magistrate Kiely]: Well, you didn't tell [her] that the door was open and you walked in?

---

[2]  Magistrate Kiely was apparently under the mistaken impression that it was Judge Carl Heldt who had conducted the change-of-plea hearing.

> [Hooker's counsel]: You know, we had a mess on this thing when we did the factual basis[.]
>
> [….]
>
> [Magistrate Kiely]: I'm going to let [the other judge] do this.
>
> [Hooker's counsel]: That's what I thought.
>
> [Magistrate Kiely]: Because [s]he found the factual basis, I don't believe you committed burglary unless you opened that door someway [*sic*] or pushed it open, so I'm going to let [the other judge] handle that.

Prior App. pp. 35–37.

[6] At the continued sentencing hearing later that month, there was no further inquiry concerning the factual basis or the plea of guilty. Judge Carl Heldt noted that he had reviewed the presentence investigation report and was "accept[ing] the parties' plea agreement, accept[ing] the Defendant's plea of guilty, and enter[ing] a judgment of conviction under Count I, to Burglary, as a Class C felony." Prior App. p. 42. Judge Heldt sentenced Hooker to four years of incarceration.

[7] On May 9, 2003, Hooker filed a *pro se* PCR petition, a petition he withdrew later that year. On December 18, 2008, Hooker filed another *pro se* PCR petition. On October 21, 2013, Hooker moved to withdraw his plea, which motion the trial court denied later that month. We affirmed the denial of the motion. *See Hooker v. State*, No. 82A01-1311-CR-523 (Ind. Ct. App. Sept. 3, 2014), *trans. denied*. While Hooker was pursing his appeal, the post-conviction

proceeding had been stayed. The post-conviction proceeding resumed following Hooker's unsuccessful appeal.

[8] In late 2017, Hooker's PCR petition was amended to seek relief on the basis that the trial court had improperly accepted an unreliable plea. The State answered, denying the allegations and asserting that the amended PCR petition was barred by waiver, prior adjudication, laches, res judicata, collateral estoppel, and law of the case. On August 29, 2018, the post-conviction court, in an order prepared by now-Magistrate Fink and approved by now-Judge Kiely, denied Hooker's PCR petition.

# Discussion and Decision[3]

[9] In post-conviction matters, "[t]he petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence." Ind. Post-Conviction Rule 1(5); *see also* Ind. Code § 35-35-1-4(e) (identifying this burden of proof for post-sentencing matters regarding the withdrawal of a plea of guilty). Thus, when a petitioner is appealing the denial of his petition for post-conviction relief, he appeals from a negative judgment. *Humphrey v. State*, 73 N.E.3d 677, 681 (Ind. 2017). A party appealing from a negative judgment must show that the evidence leads unerringly and unmistakably to an opposite conclusion. *Id.* In conducting our review, we "shall not set aside the findings or judgment

---

[3] The State argues that Hooker's claim in this proceeding is barred by the doctrines of waiver, res judicata, and laches. In light of our "marked preference for deciding disputes on their merits and for giving parties their day in court[,]" *Butler v. State*, 933 N.E.2d 33, 36 (Ind. Ct. App. 2010) (citation omitted), and in the interest of heading off potential future litigation, we choose to address the merits of Hooker's claim.

unless clearly erroneous," and shall give "due regard" to the opportunity of the post-conviction court to judge the credibility of witnesses. Ind. Trial Rule 52(A); *see* P-C.R. 1(6) (requiring "specific findings of fact, and conclusions of law on all issues presented"). Put differently, "we do not defer to the post-conviction court's legal conclusions" but will reverse its findings and judgment only upon a showing of clear error, or that which leaves us with a definite and firm conviction that a mistake has been made. *Humphrey*, 73 N.E.3d at 682.

[10] Hooker is essentially attempting to withdraw the guilty plea to Class C felony burglary that the trial court accepted and for which it sentenced him in 2001. Indiana Code Section 35-35-1-4(b) provides as follows:

> After being sentenced following a plea of guilty, or guilty but mentally ill at the time of the crime, the convicted person may not as a matter of right withdraw the plea. However, upon motion of the convicted person, the court shall vacate the judgment and allow the withdrawal whenever the convicted person proves that withdrawal is necessary to correct a manifest injustice. A motion to vacate judgment and withdraw the plea made under this subsection shall be treated by the court as a petition for postconviction relief under the Indiana Rules of Procedure for Postconviction Remedies. For purposes of this section, withdrawal of the plea is necessary to correct a manifest injustice whenever […] the plea was not entered or ratified by the convicted person[.]

[11] "[A]n Indiana trial court may not accept a guilty plea that is accompanied by a denial of guilt." *Carter v. State*, 739 N.E.2d 126, 129 (Ind. 2000).

> [A] plea of guilty tendered by one who in the same breath protests his innocence, or declares he actually does not know whether or not he is guilty, is no plea at all. Certainly it is not a sufficient plea upon which to base a judgment of conviction. No plea of guilty

should be accepted when it appears to be doubtful whether it is being intelligently and understandingly made, or when it appears that, for any reason, the plea is wholly inconsistent with the realities of the situation.

*Harshman v. State*, 232 Ind. 618, 621, 115 N.E.2d 501, 502 (1953). Before a trial court may accept a plea of guilty, the defendant must tender a reliable admission of guilt. *Ellis v. State*, 67 N.E.3d 643, 650–51 (Ind. 2017). If a trial court accepts an unreliable plea, the court commits reversible error, *Ross v. State*, 456 N.E.2d 420, 423 (Ind. 1983), providing a proper basis for PCR. *See Ellis*, 67 N.E.3d at 646.

[12] Hooker challenges the acceptance of his plea of guilty to burglary, an offense that contains the element of "breaking," Ind. Code § 35-43-2-1, the element Hooker claims he failed to admit. Under the circumstances of this case, we conclude that Hooker's equivocation at his guilty plea hearing did not amount to a denial of breaking into Z.M.'s residence. First, nothing Hooker said at any point amounted to an actual denial of breaking. While it is well-established that "[w]alking through an open door does not constitute a 'breaking' as such element is known in the crime of burglary[,]" *Cockerham v. State*, 246 Ind. 303, 307, 204 N.E.2d 654, 657 (1965), this is not what Hooker claimed to have done. Hooker admitted that he had to "squeeze" through an opening to enter the residence, and "[a] 'breaking' is established when even the slightest force is used to gain unauthorized entry[.]" *Trice v. State*, 490 N.E.2d 757, 758–59 (Ind. 1986). At most, Hooker indicated that he did not have to push the door open, which still does not take him where he needs to go. Even if we assume that the

partially-open door did not move at all when Hooker squeezed through it, force was nonetheless used. *See McCovens v. State*, 539 N.E.2d 26, 29 (Ind. 1989) ("Appellant committed a "breaking" when he either climbed over [a fence] or squeezed through its sections.").

[13] Moreover, when the trial court asked Hooker to agree to a factual basis establishing the element of breaking and acknowledge his guilt, he did. After the State read the factual basis into the record, which indicated that Z.M. had closed the door before leaving her residence, Hooker indicated that he wanted to plead guilty. When Judge Fink asked Hooker if he believed that he had committed burglary, he first replied "[s]omewhat yes" before admitting that "I did it" when asked to clarify. Prior App. p. 20. Hooker indicated twice more that he "did it" and that he wanted to admit that he had committed burglary. Prior App. p. 20. Hooker also did not dispute the accuracy of the State's factual basis when asked. While Hooker seemingly wanted it known that he had not *violently* broken into Z.M.'s residence (by kicking in a door or the like), Hooker did not actually ever deny committing actions that qualify as breaking. Because this is not a case in which the trial court accepted a guilty plea while Hooker was simultaneously maintaining his innocence, he has failed to establish that the post-conviction court's judgment is clearly erroneous.

[14] The judgment of the post-conviction court is affirmed.

Brown, J., concurs.

Bailey, J., dissents with opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David Hooker, | Court of Appeals Case No. |
| *Appellant-Petitioner,* | 18A-PC-2318 |
| v. | |
| State of Indiana, | |
| *Appellee-Respondent*. | |

**Bailey, Judge, dissenting.**

I respectfully dissent. Indiana courts have broad discretion to reject a plea of guilty. Ind. Code § 35-35-3-3(b); *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind. 1994). However, when a trial court chooses to accept a proffered plea, the trial court is constrained to accept only a reliable plea of guilty. *See Ellis v. State*, 67 N.E.3d 643, 650-51 (Ind. 2017). Should a court accept an unreliable plea, the defendant may file a petition for post-conviction relief, challenging acceptance. I.C. § 35-35-1-4(c); *Ellis*, 67 N.E.3d at 651. In doing so, the defendant need only show—by a preponderance of the evidence—that the court accepted an unreliable plea. *See* Ind. Post-Conviction Rule 1(5); *see also* I.C. § 35-35-1-4(e).

[16]     A plea of guilty is rendered unreliable if "the defendant protests his innocence while simultaneously attempting to enter the plea." *Ellis*, 67 N.E.3d at 646. Moreover, if a defendant disputes even a single element of an offense, the trial court should regard the defendant's statements as a protestation of innocence. *See id.* at 650-51. Indeed, courts "cannot ignore such repudiations even though the defendant contributed to his own demise by pleading guilty." *Id.* at 651. Ultimately, "as a matter of law, 'a judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time.'" *Id.* at 646 (quoting *Ross v. State*, 456 N.E.2d 420, 423 (Ind. 1983)).

[17]     The offense of Burglary contains an element of "breaking," I.C. § 35-43-2-1—an element satisfied by even the slightest use of force, *see Trice v. State*, 490 N.E.2d 757, 758-59 (Ind. 1986). Our supreme court long ago held that "[w]alking through an open door does not constitute a 'breaking'" for the offense of Burglary. *Cockerham v. State*, 246 Ind. 303, 204 N.E.2d 654, 657 (1965).

[18]     At his plea hearing, Hooker attempted to plead guilty to Burglary—yet, he also asserted that he had "moved by" and "squeez[ed] through" a propped-open door. Prior App. at 11-12. The majority minimizes Hooker's statements:

> [N]othing Hooker said at any point amounted to an actual denial of breaking. . . . At most, Hooker indicated that he did not have to push the door open, which still does not take him where he needs to go. Even if we assume that the partially-open door did not move at all when Hooker squeezed through it, force was nonetheless used. . . . Hooker did not actually ever deny committing actions that qualify as breaking.

Slip op. at 12-13. It seems the majority is faulting Hooker for imprecision—in that "squeezing" through a doorway *could have* involved some force against the door or the frame. Thus, according to the majority, Hooker never *really* disputed any element.[4] Yet, Indiana law holds trial courts—not defendants—accountable for scrutinizing guilty pleas prior to acceptance. *See Patton v. State*, 517 N.E.2d 374, 375 (Ind. 1987) ("[G]uilty pleas should be cautiously received. The more serious the offense, the more cautious a trial court should be."). This rule was "designed to heighten the reliability of the guilty plea." *Trueblood v. State*, 587 N.E.2d 105, 107 (Ind. 1992). This rule also avoids a practice that would "diminish respect" for courts: "conviction and sentencing without trial of citizens who tell the judge they committed no crime." *Id.* As our supreme court has explained: "A requirement that a guilty plea manifest an unqualified admission of guilt does not exalt form over substance. It implements fundamental notions of due process essential to the fair and just administration of criminal law." *Ellis*, 67 N.E.3d at 651 (quoting *Patton*, 517 N.E.2d at 376).

[19]     I cannot say the instant plea was unqualified and reliable. Even the majority identifies equivocation at the hearing, "conclud[ing] that Hooker's equivocation at his guilty plea hearing did not amount to a denial of breaking into Z.M.'s residence." Slip op. at 12. The trial court could have dispelled uncertainty by

---

[4] The majority supposes that "Hooker seemingly wanted it known that he had not *violently* broken into Z.M.'s residence (by kicking in a door or the like)." Slip op. at 13. Yet, it appears that Hooker instead disputed having committed the offense of Burglary—which requires a breaking—while readily admitting that he had committed the lesser-included offense of Theft, for which he was charged under Count II. Yet, as the Theft was only a Class D felony, the State insisted upon squeezing Hooker for a Class C felony conviction.

asking what Hooker meant by squeezing by the door. Moreover, there was also opportunity for clarification at subsequent hearings, as Hooker again asserted the door had been open. It was not Hooker's responsibility to clarify his own equivocation. Further, although Hooker eventually admitted to Burglary, he capitulated "only after the court repeatedly said that it could not otherwise let him plead guilty, after he said that he wanted to plead guilty because he was worried about the higher sentence he was facing, and after he said he believed that he was only 'somewhat' guilty of burglary." Reply Br. at 8. Thus, any eventual admission was tainted by pervasive equivocation. *See Huddleston v. State*, 951 N.E.2d 277, 281 (Ind. Ct. App. 2011) ("[D]espite the trial court's efforts to extract an unequivocal admission . . . we cannot square any such admission with [the defendant's] statements, made during the same proceeding, that he lacked the requisite culpability for that offense."), *trans. denied*.

[20]     Under these circumstances, the plea was unreliable as a matter of law. I would therefore conclude that the post-conviction court clearly erred in denying relief.[5]

---

[5] In reaching this conclusion, I would reject each of the State's affirmative defenses. Two of these defenses—res judicata and waiver—relate to an appeal Hooker pursued following the denial of his Verified Motion to Vacate the Judgment and Withdraw the Plea. Hooker filed that *pro se* motion during the pendency of the instant proceedings. Therein, Hooker presented a different issue—whether he was entitled to a particular advisement—and so the doctrine of res judicata does not bar the instant claim, which is that the plea itself was unreliable. *See Ind. Dep't of Envtl. Mgmt. v. Conard*, 614 N.E.2d 916, 923 (Ind. 1993). Further, Indiana Code Section 35-35-1-4(c) provides that "[a] motion to vacate judgment and withdraw the plea . . . shall be treated by the court as a petition for postconviction relief under the Indiana Rules of Procedure for Postconviction Remedies." Thus, the post-conviction court was obligated to treat Hooker's motion as a successive petition for post-conviction relief—and, under the Indiana post-conviction rules, a petitioner must take certain steps to pursue a successive petition. *See* Ind. P-C.R. 1(12). Hooker had not taken those steps. Therefore, I cannot say there was any preclusive adjudication—or, with respect to the defense of waiver, that Hooker waived the instant claim by failing to present the claim in an improper successive petition. *See*

*generally* P-C.R. 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."). As to laches, the post-conviction court found that "most of the delays in this case were the result of a change in counsel, the time needed for [Hooker's] attorneys to conduct a proper investigation and preparation, along with the Court's failure to identify that the December 5, 2001 hearing was missing from the chronological case summary." Appellant's App. Vol. IV at 53. Thus, the court implicitly concluded that Hooker had not unreasonably delayed in seeking relief—and evidence adduced at the hearing does not lead unerringly and unmistakably to an opposite conclusion. *See Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006) (noting that the proponent of an affirmative defense bears the burden of proof on that defense); *cf. Armstrong v. State*, 747 N.E.2d 1119, 1120 (Ind. 2001) (observing that a petitioner for post-conviction relief "is not appealing from a negative judgment" when challenging the application of an affirmative defense).