# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 25 2019, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

Demajio J. Ellis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 25, 2019

Court of Appeals Case No.
18A-CR-1646

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1011-FA-44

**Baker, Judge.**

[1] Demajio Ellis appeals his convictions for two counts of Class A Felony Attempted Murder[1] and two counts of Class C Felony Attempted Robbery.[2] Ellis argues that the trial court committed fundamental error when it allowed the State to call his accomplice as a witness and that the evidence is insufficient to support the attempted murder convictions. Finding no fundamental error and sufficient evidence, we affirm.

## Facts

[2] In November 2010, Chad Nickerson, Jerry Atwood, and Jason Kleinrichert went to a McDonald's in South Bend one afternoon. At that time, Atwood and Kleinrichert were both fifteen or sixteen years old. Ellis and Shawn Alexander entered the restaurant, approached the group, and asked them to buy a can of spray paint from Family Dollar; the group refused. Ellis and Alexander also asked Atwood if he could obtain a gun for them; Atwood replied that he could not. The group then left McDonald's, spent some more time together at different places, and split up around 7:30 p.m., when Atwood and Kleinrichert began walking to Kleinrichert's house together.

[3] As Atwood and Kleinrichert were walking, Ellis and Alexander approached them, asking for a cigarette or money for a cigarette. Ellis and Alexander then wanted to see Atwood's hoodie, so he took it off so that Alexander could try it

---

[1] Ind. Code §§ 35-42-1-1 (2010), 35-41-5-1 (2010).

[2] I.C. §§ 35-42-5-1 (2010), 35-41-5-1 (2010).

on.  Alexander reached into the pocket of the hoodie and found a knife, asking Atwood, "Oh, you gonna pull a knife on us?"  Tr. Vol. II p. 101.  Atwood said no.

[4] Ellis and Alexander then forced Atwood and Kleinrichert to go with them to an abandoned house.  Inside, Ellis and Alexander told the two teenagers to kneel and take their shirts off.  Then, they took them to a nearby alley.  Alexander walked behind Atwood, grabbed him by the throat, and choked him to the point of unconsciousness.  Atwood later regained consciousness and saw Ellis and Alexander fighting Kleinrichert.  Atwood started swinging his fists and mistakenly hit Kleinrichert, who fell face first into a metal electric box.  Atwood was then choked to the point of losing consciousness again; when he regained consciousness, he began kicking Ellis.  Someone kicked Atwood in the face, and Ellis stomped on Atwood's face, causing him to lose consciousness yet again.  While Atwood was unconscious, someone cut his throat and Kleinrichert's throat.  When Atwood woke up, he saw Kleinrichert and no one else.  Kleinrichert told Atwood that Alexander had slashed Kleinrichert's throat and that Ellis had cut Atwood.  Kleinrichert and Atwood were both bleeding and surprised to be alive.  Their hoodies and their knives were gone.

[5] Kleinrichert and Atwood then ran to Nickerson's house.  Nickerson opened the door and saw that the necks of both teenagers were cut and bleeding and their shirts were covered in blood.  Atwood told Nickerson that the two men the group had encountered at McDonald's were the attackers.  Nickerson called 911.  Police responded, finding Atwood and Kleinrichert terrified,

hyperventilating, and bleeding. They were immediately transported to the hospital because of the life-threatening injuries.

[6] On November 9, 2010, the State charged Ellis with two counts of attempted murder and two counts of attempted robbery, all as Class A felonies. On May 11, 2011, Ellis pleaded guilty. Eventually, in 2017, our Supreme Court found that Ellis was entitled to post-conviction relief because he had maintained his innocence at the same time he pleaded guilty. *Ellis v. State*, 67 N.E.3d 643, 645 (Ind. 2017). Therefore, the cause was remanded to the trial court for further proceedings.

[7] A jury trial took place on June 4-5, 2018.[3] By that time, Alexander had pleaded guilty to the attempted murder and attempted robbery of both victims. The State subpoenaed him to testify at Ellis's trial, but Alexander indicated that he did not want to testify. He told the trial court that he intended to exercise his Fifth Amendment rights. The trial court informed Alexander that because he had pleaded guilty, he did not have any Fifth Amendment rights in this case, and that if he refused to testify, he would be held in contempt of court. The State called Alexander as a witness and, in front of the jury, Alexander invoked his Fifth Amendment rights. The trial court excused the jury and, after giving Alexander several opportunities to change his mind, found Alexander in contempt of court.

---

[3] Ellis represented himself at his jury trial. Atwood testified reluctantly at trial; Kleinrichert did not testify.

[8] The State proceeded against Ellis under two separate theories: Ellis as the principal and Ellis as an accomplice to Alexander. The trial court instructed the jury on attempted murder under both theories. The jury found Ellis guilty as charged. On July 5, 2018, the trial court sentenced Ellis to an aggregate term of forty years imprisonment. Ellis now appeals.

# Discussion and Decision

# I. Alexander

[9] First, Ellis argues that the trial court committed fundamental error when it permitted the State to call Alexander to testify, knowing that Alexander intended to invoke the Fifth Amendment. Because Ellis did not object at the time of trial, he must show fundamental error to be entitled to relief. An error is fundamental if it made a fair trial impossible or constituted a blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018). The fundamental error doctrine is extremely narrow and applies only if the error was so blatant that the trial judge should have acted independently to correct the situation. *Id.*

[10] As a general rule, "it is improper for the prosecutor to call as a witness a codefendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify." *Borders v. State*, 688 N.E.2d 874, 879 (Ind. 1997). But when an individual has already been convicted of the crime at issue, any question asked by the State merely serves to identify the

individual as the perpetrator of that crime; therefore, the individual is not entitled to any Fifth Amendment rights. *State v. Cass*, 635 N.E.2d 225, 227 (Ind. Ct. App. 1994).

[11] Here, Alexander had already been convicted of attempted murder and attempted robbery when he was subpoenaed as a witness. The trial court told him that he was not entitled to invoke the Fifth Amendment to avoid testifying and that if he refused to testify, he would be found in contempt of court. Under these circumstances, it was not erroneous to permit Alexander to be called as a witness. Furthermore, Ellis did not ask that the trial court admonish the jury to disregard the testimony, nor did he ask that the jury be given an instruction regarding Alexander's invocation of the Fifth Amendment. Therefore, even if an error occurred, it was not fundamental. Ellis is not entitled to relief on this basis.

## II. Sufficiency

[12] Ellis also argues that the evidence is insufficient to support his convictions for two counts of attempted murder. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[13]     To convict Ellis of Class A felony attempted murder, the State was required to prove beyond a reasonable doubt that he engaged in conduct that constituted a substantial step toward intentionally killing Atwood and Kleinrichert. I.C. §§ 35-42-1-1 (2010), 35-41-5-1 (2010). The State must prove that Ellis acted with specific intent to kill. *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015).

[14]     As noted above, the State proceeded against Ellis under two theories—Ellis as the principal and Ellis as an accomplice to Alexander—and the jury was instructed on both theories. Indiana's accomplice liability statute provides, in relevant part, that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" I.C. § 35-41-2-4. Pursuant to this statute, an individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Specht v. State*, 838 N.E.2d 1081, 1093 (Ind. Ct. App. 2005). An accused's mere presence at the scene of the crime, or mere acquiescence in the commission of a crime, is insufficient to convict the accused as an accomplice. *Bethel v. State*, 110 N.E.3d 444, 450 (Ind. Ct. App. 2018), *trans. denied*. Instead, we consider the following factors: (1) presence at the scene of the crime; (2) companionship with another person engaged in criminal activity; (3) failure to oppose the crime; and (4) the defendant's conduct before, during, and after the occurrence of the crime. *Woods v. State*, 963 N.E.2d 632, 634 (Ind. Ct. App. 2012).

[15]     Here, there is evidence that Ellis himself attempted to kill Atwood. While Atwood was unconscious at the time his throat was slit, he testified that

Kleinrichert told him that Ellis had cut him. Atwood also testified that Kleinrichert stated that Ellis had been walking around with a knife in his hand.[4]

[16] Even if Atwood's testimony were discounted, there is a wealth of other evidence to show that Ellis acted as an accomplice to the attempted murders. It is undisputed that Ellis was present at the scene of the crimes and it is clear from the record that Ellis had companionship with Alexander, given that Ellis and Alexander were together when they approached the group in McDonald's and were still together later when they encountered Atwood and Kleinrichert. Ellis was an active participant in taking Atwood and Kleinrichert to the abandoned house and in the subsequent fight, during which he stomped on Atwood's face. There is no evidence that Ellis ever opposed the crime. Instead, Ellis's conduct before, during, and after the crimes plainly shows that he was an active participant and that he acted with specific intent to kill the teenagers. In addition to Ellis's conduct during the fight, he fled with Alexander afterwards, leaving Atwood and Kleinrichert unconscious and bleeding with their necks sliced. We find that even if the evidence is questionable with respect to Ellis's direct commission of the attempted murders, it readily supports his guilt as an accomplice to the crimes. In other words, the evidence is sufficient.

---

[4] While Ellis states in a footnote of his brief that Atwood's statements constituted hearsay, he did not object to those statements at trial and may not now raise the argument on appeal. We note that even if an objection had been made, it would have been overruled because the statements would have qualified as excited utterances. Ind. Evidence Rule 803(2).

[17]    The judgment of the trial court is affirmed.

Najam, J., and Robb, J., concur.